*PELLETIER vs. ROUMAGE.*

APPEAL FROM THE COURT OF THE PARISH AND CITY
OF NEW-ORLEANS.

One who exceeds the limits of his mandate has no claim for indemnification.

This was an action upon an account current, in which there was an item of three thousand and nine hundred dollars, as an advance to the defendant's brother in New York, by authority of defendant's letter of credit of 18th July, 1826, directing the plaintiff to open a credit to his brother, F. Romage, for five thousand dollars, to be drawn as might be wanted. The defendant pleaded the general issue, and reconvened for $161 67. It was in evidence that when the plaintiff had advanced $1,100 and drawn for it, a new arrangement was entered into between himself and F. Romage, that further advances should be made him, and in the event of his being unable himself to meet them at fixed periods, they should be charged to his brother, on account of the letter of credit. The defendant subsequently wrote to the plaintiff to take no more of his brother's drafts on him.

Plaintiff then debited him with advances to his brother, making in all $5000, and drew on him for it. The bill was dishonored and to recover its amount this suit was brought. There was judgment for the defendant, and the defendant appealed.

*Martin, J.* delivered the opinion of the court.

The plaintiff claims a balance of $3,760 69, according to an account current annexed to the petition. The defendant denied the debt, and claimed in reconvention, a sum of $161 67, according to an account current annexed to his answer.

The defendant had judgment both on the original demand and that in reconvention, and the plaintiff appealed.

It appears that in July, 1826, the plaintiff was directed to open to the defendant's brother, a credit of $5000, to be advanced as his affairs might require, in the city of New York; and the plaintiff was directed, in case he had no funds of the defendant in his hands at the time of such advance, to draw on the defendant in New Orleans. Shortly after this, the plaintiff made an advance for $1,100, for which he drew.

An arrangement afterwards was entered into by the plaintiff and the defendant's brother, by which the former agreed to make very considerable advances to the latter, to enable him to carry on an extensive rope establishment in New Jersey. By this arrangement the plaintiff secured large profits by interests and commissions. He stipulated that on the defendant's brother failing to make payment at certain periods, the deficiency should be carried to his debit, as an advance on the credit which his brother had given him on the plaintiff. The business of the rope-walk was, by this means, considerably extended; and shipments of ropes were made to the defendant, for sale in New Orleans; on each of which his brother drew on him, in favor of the plaintiff, for the probable amount of the sales. These operations in New Orleans became unprofitable, and,

the defendant reshipped to his brother, the unsold stock of ropes, and directed the plaintiff to forbear taking the brother's drafts. At last, in the year 1829, the defendant's brother being unable to reemburse the portion of the plaintiff's advances which had become payable, the plaintiff credited him with a sum of $3,900, the balance of that of $5000, for which the defendant had given him credit, and immediately drew on the defendant therefor. Payment was refused, and the present suit was instituted to test the correctness of the claim of the plaintiff on the defendant for the reembursement of that sum.

The parish judge has considered the return of the unsold stock of ropes, of which the plaintiff was advised, and the prohibition of his receiving drafts on the defendant from his brother, as an implied recall of the credit opened in 1826.

In his opinion, on this point, we are unable to concur. The shipments to New Orleans having become unprofitable, the determination of the defendant to put an end to them, afford no presumption that he intended to put an end to the aid he had granted his brother; and the directions he gave to the plaintiff not to receive his brother's drafts, was, perhaps, dictated by a wish that the credit he had given him on the plaintiff should be the extent of the assistance he afforded him.

But it has appeared to us that the plaintiff went beyond the boundaries of his mandate. The defendant intended to afford his brother, by the help of moderate and timely cash advances, the facility of carrying on a business commensurate with his means and facilitated by this aid. It does not appear that he intended that the plaintiff by advances of cash to three times the amount contemplated, should decoy his brother into an extension of business, rendered burthensome by the interests and high commissions which his business did not warrant—nor that the plaintiff should consider here the defendant ultimately liable for the credits still open, after he the plaintiff had swept from his brother whatever could be

One who exceeds the limits of his mandate, has no claim for indemnification.

obtained for advances made without the defendant's knowledge or consent, and on terms very different than those the credit proposed was intended.

On this ground we think the judgment ought not to be disturbed.

It is therefore ordered, adjudged and decreed, that it be affirmed with costs in both courts.